**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN NAGLE CO.,**

             **Appellant,**

             v.

**WILLIAM J. MCCARTHY,**

             **Appellee.**

**1:14-cv-1461
(GLS)**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE APPELLANT:**<br>Office of Douglas James Rose<br>150 North Street, Suite 31B<br>Pittsfield, MA 01201 | DOUGLAS J. ROSE, ESQ. |
| Rubin, Rudman Law Firm<br>50 Rowes Wharf<br>Boston, MA 02110 | JOSEPH S. BODOFF, ESQ. |
| **FOR THE APPELLEE:**<br>The Dribusch Law Firm<br>1001 Glaz Street<br>East Greenbush, NY 12061 | CHRISTIAN H. DRIBUSCH,<br>ESQ. |

**Gary L. Sharpe
District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Appellant John Nagle Co. appeals from a judgment and order of the

Bankruptcy Court (Littlefield, C.J.), filed August 26, 2014 and October 23, 2014, respectively, which: (1) entered judgment in favor of appellee William M. McCarthy, trustee, in the amount of $109,325.01; and (2) denied Nagle's motion for reconsideration. For the reasons that follow, Bankruptcy Court's judgment and order is affirmed.

## II. Background

In October 2011, the trustee filed an adversary complaint to avoid certain transfers made by The Cousins Fish Market, the Chapter 7 debtor, to Nagle. (AA:[1] 19-25.) On several separate occasions, Nagle's answering deadline was extended with the consent of the trustee. (AA: 2-4.) During that period of time, attorney David Goldin represented Nagle; he eventually interposed an answer on Nagle's behalf in December 2012, more than one year after commencement of the adversary case. (AA: 5.)

After initially failing to timely comply with discovery demands, first filed by the trustee in January 2013, Nagle eventually responded to the trustee's demands and also sought an extension of the discovery deadline, which request was granted. (AA: 5-7.) Thereafter, the trustee moved for

---

[1] Page references preceded by "AA:" are to the consecutively-paginated Appellant's Appendix. (Dkt. No. 9, Attachs. 1, 2.)

partial summary judgment.  (AA: 8.)  A hand written response from Robert Nagle, vice president of operations and treasurer of Nagle, dated June 2013, was filed in opposition to the motion; in his letter, Robert informed the court that his attorney had "not been in communication with" him and that he found out about the "current court Filings through a local Boston Bankruptcy Attorney Joe Bodoff."  (AA: 8-9, 144; Dkt. No. 3, Attach. 14.)  Although they dispute what transpired, the parties agree that a telephonic hearing was held soon thereafter with respect to Robert's letter at which Goldin, Robert, and corporate counsel for Nagle, Brian Olmstead, appeared by telephone.  (Dkt. No. 9 at 42-44; Dkt. No. 11 at 3, 6-7.)  On June 20, 2013, Nagle substituted counsel, replacing Goldin with attorney Douglas Rose, who made no attempt to reopen discovery or seek a protective order.  (AA: 10, 92.)  Five days later, Bankruptcy Court granted the trustee's motion for partial summary judgment, but preserved Nagle's right to present affirmative defenses, and referenced previously scheduled trial dates to resolve the outstanding issues, *i.e.*, Nagle's affirmative defenses.  (AA: 10; Dkt. No. 4, Attach. 1.)

On July 18, 2013, Nagle forwarded a "supplemental response to first request for production" to the trustee in advance of trial, but well after the

3

close of discovery. (AA: 427-29.) The trustee rejected the supplement, expressing his belief that "the supplemental information has been within the possession, custody and control of [Nagle], and thus should have been produced prior to the April 26, 2013 discovery deadline," and that Nagle was required to obtain court authorization to make such "an untimely discovery response." (AA: 431.) The trustee thereafter filed a motion *in limine* seeking "to exclude evidence not produced in discovery," which included the documents forwarded by Nagle on July 18 and any witnesses not previously disclosed. (AA: 10, 54-63.) At a hearing on that motion, (AA: 87-111), Bankruptcy Court, which referenced the quality of Goldin's prior representation, granted the motion and precluded Nagle's use of previously undisclosed evidence that related to its affirmative defenses. (AA: 97-103, 112-13). Bankruptcy Court did, however, leave open Nagle's right to call a witness to testify, but specifically contemplated precluding such witnesses if, after the trustee had an opportunity to depose that person, the prejudice to the trustee from late disclosure was too great to be tolerated. (AA: 102-03.)

After Nagle identified Robert as a witness it intended to call at trial, and the trustee had an opportunity to depose him, the trustee moved to

4

preclude Robert from testifying because his testimony would be "predicated, in part, on . . . documents requested but not disclosed, and . . . discussion with parties who had personal knowledge but not disclosed." (AA: 121-26.) Following its review of the deposition transcript, Bankruptcy Court, agreeing with the trustee, precluded Robert from testifying to any matters outside of his personal knowledge or premised upon his review of previously excluded evidence. (AA: 227-28, 229-35; Dkt. No. 11 at 55-56.) The court specifically preserved Nagle's right to deduce Robert's testimony on matters for which he had personal knowledge. (AA: 233.) When the day of trial came soon thereafter, off-the-record discussions took place, (Dkt. No. 11 at 48-49), and, ultimately, Nagle opted to forego calling Robert as a witness for reasons not altogether clear, (*id.* at 49-50). Nagle, instead, agreed to proceed on the parties' stipulation of uncontested facts and further briefing. (*Id.* at 57-59.) The uncontested facts consisted primarily of invoices and checks. (AA: 240-331.)

After the parties submitted their stipulation of uncontested facts and Nagle filed proposed findings of fact and conclusions of law, to which the trustee objected, Bankruptcy Court orally ruled on Nagle's outstanding

5

affirmative defenses. (AA: 14, 30-43, 236-37.) It was Nagle's burden to establish that the transfers at the heart of the adversary proceeding were nonavoidable as either "contemporaneous exchange for new value" or "made in the ordinary course of business." *See* 11 U.S.C. § 547(c), (g). After a thorough explanation on the record, Bankruptcy Court summed up its ruling best in the following sentence:

> Because of the prior [partial] summary judgment motion made by the trustee, all of the elements of the preferential transfers outlined in the complaint have been established. Nagle's counsel, who came in this case late -- came into this case late, has done a valiant job under the circumstances. Nevertheless, because nearly all of the evidence -- because nearly all the evidence necessary to establish its affirmative defenses was precluded, the defendant has not proven any of its defenses.

(AA: 42-43.) Bankruptcy Court, obviously bothered by the fact that Nagle had to suffer the consequences of counsel's errors, made clear that its ruling was based on a failure of proof owing largely to the prior preclusion rulings, which, in turn, flowed from the missteps of counsel. (AA: 39, 42, 233-34.) Nagle, still hoping for a favorable outcome, moved for reconsideration following entry of judgment in favor of the trustee. (AA: 15, 355-72.) Bankruptcy Court, again referencing the subpar quality of Nagle's

counsel at the outset of the case and even recognizing that "malpractice [may have been] involved," denied the motion. (AA: 46-47, 528-30.) This appeal followed. (Dkt. No. 1.)

### III. Standard of Review

District courts have jurisdiction to hear both interlocutory and final appeals from orders of the bankruptcy court. *See* 28 U.S.C. § 158(a). In exercising its appellate jurisdiction, the district court distinguishes between findings of fact and conclusions of law; reviewing the former under the "clear error" standard, and the latter *de novo*. *R² Invs., LDC v. Charter Commc'ns, Inc. (*In re *Charter Commc'ns, Inc.)*, 691 F.3d 476, 483 (2d Cir. 2012); *see United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). Where a finding is mixed—*i.e.*, it contains both conclusions of law and factual findings—the *de novo* standard applies. *See Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994). "After applying these standards to the questions of law and fact, the district court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or

remand with instructions for further proceedings.'" *Cty of Clinton v. Warehouse at Van Buren St., Inc.*, 496 B.R. 278, 280 (N.D.N.Y. 2013) (quoting former Fed. R. Bankr. P. 8013[2]).

## IV. Discussion

In its fifty-six-page brief, Nagle raises a host of issues.[3] They are considered, in turn, below.

## A. Findings of Fact

The first category of errors alleged by Nagle fall under the umbrella of factual errors. Nagle identifies four separate issues. Each of these arguments is judged under the clearly erroneous standard of review. *See R² Invs.*, 691 F.3d at 483.

### 1. *Invoices and Payments*

Nagle contends that Bankruptcy Court ignored evidence contrary to

---

[2] On April 25, 2014, the Federal Rules of Bankruptcy Procedure were amended, effective December 1, 2014, by order of the Supreme Court. *See* Order Amending Fed. R. Bankr. P. (Apr. 25, 2014), http://www.supremecourt.gov/orders/courtorders/frbk14_d28l.pdf. The amendments, among other things, removed Rule 8013 and replaced it with a revised version of former Rule 8011. Despite the omission of what existed as Rule 8013 prior to December 2014, logic still compels the same conclusion with respect to the appellate powers of the District Court.

[3] Without prior permission of the court, both of the parties filed briefs that far-and-away exceed the page limits imposed by the Bankruptcy Appeal Scheduling Order, (Dkt. No. 7 at 2), and this District's Local Rules, which cap appellant's and respondent's briefs at twenty-five pages and reply briefs at ten pages, *see* N.D.N.Y. L.R. 7.1(a)(1), (b)(1). The parties' disregard for the Rules and court orders in this regard may result in the summary rejection of their briefing in the future.

8

its finding that no evidence established when payments were due and whether payment was made early or late. (Dkt. No. 9 at 28-29.) In support of its position, Nagle points to the terms identified on the invoices and the checks' reference to particular invoice numbers. (*Id.*) Because Bankruptcy Court did not clearly err, its finding is affirmed.

During its oral decision on Nagle's ordinary course of business affirmative defense,[4] Bankruptcy Court expressed its view that Nagle's proof—invoices and checks primarily from within the preference period—was insufficient because "[t]here [wa]s no evidence to establish when the payment was due under any of the invoices or whether Cousins paid early or late." (AA: 41-42.) Bankruptcy Court also noted a failure of proof with respect to the baseline of dealings between Nagle and Cousins. (AA: 42.) In other words, the affirmative defense was not proven by Nagle because it failed in two respects, according to Bankruptcy Court. Similarly, the court found that the invoices and checks alone could not show the subjective intent of Nagle and Cousins required to prove the contemporaneous exchange for new value defense. (AA: 38-39.)

---

[4] The legal issues that relate to Nagle's affirmative defenses are addressed below. *See infra* Part IV.B.1 and 2.

Nagle urges this court to infer from the invoice term "COD check" and the timing of checks specifically referencing an invoice number that Bankruptcy Court committed clear error by finding that it was impossible to determine when payment was due and if it was timely made. Despite Nagle's argument, it is beyond dispute that Cousins did not make payment by check upon actually delivery. Indeed, the trustee's schedule summary of transfers, which is merely a summary of the invoices and checks, shows that payment was not made by check at the same time Cousins received the goods. (AA: 238-39, 240-331.) Bankruptcy Court's reasonable view of the evidence reflects the notion, more clearly drawn out by Robert's proffered testimony, which was ultimately precluded, (AA: 219-20), that Nagle and Cousins' business arrangement could not be definitively gleaned from the invoices and checks alone. For these reasons, clear error was not committed by Bankruptcy Court with respect to this issue.

2. *Prejudice as a Result of Late Document Production*

Next, Nagle asserts that Bankruptcy Court improperly concluded that the trustee was prejudiced because of Nagle's failure to timely produce certain evidence. (Dkt. No. 9 at 29-33, 46-48.) Nagle argues that Bankruptcy Court committed error by presuming prejudice in the absence

10

of any proof. (*Id.* at 33, 47.)⁵ The court disagrees.

During the oral return on the trustee's motion to preclude Nagle from using documents disclosed late, Bankruptcy Court specifically found that the trustee would be prejudiced by late disclosure because of the need to reopen discovery with a trial date looming. (AA: 101-02.) Regardless of Nagle's arguments to the contrary, Bankruptcy Court did not clearly err in reaching such a conclusion. The prejudice that flows from late disclosure vis-à-vis reopening discovery in the eleventh hour is axiomatic. It cannot be said, therefore, that Bankruptcy Court erred.

### 3. *Representation of Nagle*

Bankruptcy Court clearly erred, according to Nagle, by concluding that it was represented by as many as four attorneys, which the court then heavily relied upon in precluding Nagle from using certain evidence and eliciting certain testimony. (Dkt. No. 9 at 33-35.) Nagle further contends that this finding is significant because it drove Bankruptcy Court's analysis of the preclusion issue. (*Id.* at 35.) Again, the court finds no merit in

---

⁵ Nagle also goes on for four pages about the trustee's "lack of candor" in revealing certain facts to Bankruptcy Court about the prejudice flowing from late disclosure. (Dkt. No. 9 at 48-51.) The court's best guess as to why Nagle included this "argument" is as an attempt to besmirch the trustee or his counsel. While Nagle cites to Rule 9011 of the Federal Rules of Bankruptcy Procedure, it totally fails to articulate how a violation of that Rule would warrant appellate relief. (*Id.* at 51.)

11

Nagle's argument.

The issue of who provided some counsel to Nagle was squarely addressed during the return on Nagle's motion for reconsideration, at which time Nagle's appellate counsel Joseph Bodoff argued on Nagle's behalf. (AA: 487-530.) A prolonged discussion regarding Nagle's representation, at the instigation of attorney Bodoff, predominated the first part of the proceeding. (AA: 488-98.) To be clear, Bankruptcy Court did not find that four separate attorneys had formally appeared as counsel on Nagle's behalf. Instead, the court merely commented "that there were four attorneys involved in this case" on Nagle's behalf. (AA: 491.) That statement is amply supported by the record and is not the byproduct of clear error. It is also worth noting that Bankruptcy Court's "finding" in this regard was not germane to the issues it decided and it said as much. (AA: 529.) In other words, even if the court erred, and it most certainly did not, it would be of no moment.

*4.     Precluding Testimony*

Decrying the lack of a transcript to memorialize discussions in chambers, Nagle complains that Bankruptcy Court unfairly foreclosed Robert's testimony on the faulty conclusion that Robert had no personal

12

knowledge of the Cousins account. (Dkt. No. 9 at 51-55.) Nagle relies on an affidavit of Rose, submitted for the first time on appeal, to support its position. (*Id.* at 53.)[6] The argument turns on the court's factual finding that Robert was without personal knowledge, and is, therefore, measured against the clearly erroneous standard of review.

Here, Bankruptcy Court did *not* entirely foreclose Robert from testifying despite Nagle's steadfast assertion to the contrary. The record is clear and reflects Bankruptcy Court's willingness to entertain Robert's testimony based on personal knowledge. (AA: 220.) The August 22, 2013 transcript, reflecting discussions on the day that trial was set to begin, specifically with respect to whether Robert would testify, also clearly indicates that it would permit Robert's testimony "as to the company, the backdrop of the company, but . . . would not allow specifics that were outside the ambit of his personal knowledge." (Dkt. No. 11 at 48, 56.) In the end, Bankruptcy Court's ruling precluding Robert from testifying to the particulars of the Cousins account came down to a factual determination that the proffered testimony was outside the knowledge of the witness.

---

[6] With no legal basis for considering the affidavit on appeal offered by Nagle, the court excludes Rose's affidavit. (Dkt. No. 9 at 69-73.) The court is of the opinion, however, that the Rose's affidavit does not compel a different outcome in any event.

Reviewing Robert's deposition transcript and the arguments advance by attorney Rose at various points during the litigation, this court is not left with the firm conviction that an error was committed by the Bankruptcy Court. *See U.S. Gypsum Co.*, 333 U.S. at 395. Indeed the factual determination as to Robert's personal knowledge appears reasonable and generally consistent with the record as a whole.

B.  **Conclusions of Law**

The remainder of Nagle's arguments attack legal conclusions and trigger *de novo* review.

*1.   Contemporaneous Exchange For New Value*

Nagle claims that Bankruptcy Court incorrectly concluded that its exchange for value defense was not proven. (Dkt. No. 9 at 37-38.) This argument is related to the earlier-addressed contention that Bankruptcy Court erred in the factual conclusions drawn from Nagle's proof on its affirmative defenses. (*Id.*); *see supra* Part IV.A.1. Because Nagle failed to prove its defense, Bankruptcy Court is affirmed.

A creditor may defeat a trustee's attempt to avoid a preference by proving certain affirmative defenses. *See* 11 U.S.C. § 547(c). As relevant here, a creditor may prove nonavoidability by establishing that the transfer

14

in question was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and . . . in fact a substantially contemporaneous exchange." *Id.* § 547(c)(1). Stated differently, a creditor must show that: (1) "the transfer [was] for new value given to the debtor"; (2) "the transfer [was] intended to be a contemporaneous exchange"; and (3) "the transfer [was] in fact a substantially contemporaneous exchange." *Bruno Mach. Corp. v. Troy Die Cutting Co. (*In re *Bruno Mach. Corp.)*, 435 B.R. 819, 847 (Bankr. N.D.N.Y. 2010) (internal quotation marks and citation omitted). The Third Circuit Court of Appeals has explained that "[t]he critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange."[7] *Hechinger Inv. Co. of Del. v. Universal Forest Prods. (*In re *Hechinger Inv. Co. of Del.)*, 489 F.3d 568, 574 (3d Cir. 2007) (internal quotations marks and citation omitted).

Here, the invoices and checks alone could not sufficiently establish

---

[7] The court notes that the trustee misquotes this case, inserting the word "subjectively," italicized for emphasis, before the word "intended." (Dkt. No. 11 at 23.) This same error was made by Bankruptcy Court as it orally ruled on the affirmative defenses, and is quoted with the word "subjectively" in bold for emphasis by the trustee. (AA: 38; Dkt. No. 11 at 33.) The court presumes that this misstatement was an oversight, and, in any event, the court has carefully reviewed the cases cited by both parties in their briefs.

the intent of the parties to the transactions at issue. That is not to say that the only way to establish intent is through testimony. Indeed, Nagle aptly notes that intent as it relates to contemporaneous exchange is often established through surrounding circumstances. (Dkt. No. 9 at 38 (referring to *Silverman Consulting, Inc. v. Canfor Wood Prods. Mktg. (*In re *Payless Cashways, Inc.)*, 306 B.R. 243, 249 (B.A.P. 8th Cir. 2004).) Again, the critical flaw in Nagle's arguments is the inference it draws from the invoices and checks. While its suggested interpretation is not abhorrent to logic, it is not, in fact, supported by anything more than speculation. Considering that Nagle bore the burden of proving nonavoidability by a preponderance of the evidence, *see Lawson v. Ford Motor Co. (*In re *Roblin Indus.)*, 78 F.3d 30, 39 (2d Cir. 1996), *see also* 11 U.S.C. § 547(g), it needed more than innuendo to support its affirmative defense.

    *2.    Ordinary Course of Business*

Nagle, again largely relying on prior arguments tied to Bankruptcy Court's factual findings, argues that the court erred by concluding that Nagle was required to offer evidence of its dealings with Cousins outside of the ninety-day preference period where, as here, "payments were made in

16

accordance with the parties' agreement." (Dkt. No. 9 at 39-42.) Upon *de novo* review, Bankruptcy Court is affirmed.

Section 547(g) likewise permits a creditor to "prov[e] the nonavoidability of a transfer" under § 547(c), for payments "by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee" where that transfer is "made in the ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C. § 547(c)(2). The "ordinary course of business" provision "requires a subjective examination of whether a transfer was ordinary between the parties to the transfer." *McCarthy v. Navistar Fin. Corp. (*In re *Vogel Van & Storage, Inc.)*, 210 B.R. 27, 34 (N.D.N.Y. 1997).[8] To make the sufficient ordinariness showing, the creditor must establish "a baseline of dealings and show that the transfers were consistent with the parties' prior course of dealings." *Bruno Mach. Corp.*, 435 B.R. at 840 (internal quotation marks and citation omitted).

Here, there is yet another serious flaw in Nagle's advocacy that evidence of the pre-preference period was not required. It wants this court

---

[8] Notably, subparagraph B to § 547(c) was reorganized subsequent to the decision in *McCarthy*. *See* Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, § 409, 119 Stat. 23, 106 (2005).

to assume that "the payments [made by Cousins] were made in accordance with [its] agreement [with Nagle]."  (Dkt. No. 9 at 41.)  For reasons that have been beaten to death, the court will not reach the conclusion Nagle hoped it to based on the invoices and checks alone. Without some context for the timing of payments, which, again, seem to fly in the face of the ordinary meaning of "COD," it is not possible to determine what was "ordinary business" as between Nagle and Cousins.  Largely as a consequence of Bankruptcy Court's preclusion order, which prevented Nagle from late disclosure of pre-preference period evidence, (AA: 112-13, 427-29), Nagle was not able to prove this affirmative defense either.

    3.    *Telephonic Hearing*

Next, Nagle argues that, if Bankruptcy Court inquired about discovery-related issues at the June 2013 telephone hearing, it was denied the right to seek advice of counsel, which tainted the court's ruling on the preclusion issue.  (Dkt. No. 9 at 42-46.)  Nagle also preemptively contends that Olmstead's participation in the telephone hearing does not remedy Bankruptcy Court's error.  (*Id.* at 45-46.)  As a consequence, Nagle seeks vacatur of Bankruptcy Court's preclusion orders.  For reasons explained below, the court rejects these spurious contentions.

The fact that the telephone hearing was not recorded is unfortunate, but it is also of no moment. The court notes that Nagle, on the one hand, denies that either Robert or "Olmstead were asked anything about reopening discovery,"[9] and, on the other, claims that Bankruptcy Court violated its rights by so inquiring. (Dkt. No. 9 at 43-45, 65-68.) The fact that Nagle argues out of both sides of its mouth significantly undermines its argument. Other than citing to the requirement that corporations appear through counsel, *see* N.D.N.Y. Local Bankruptcy Rule 9010-2, Nagle wholly fails to provide legal support for its position. As far as this court is concerned, Nagle cannot have it both ways and this argument is rejected.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the August 26, 2014 judgment entered by Bankruptcy Court and October 23, 2014 order denying Nagle's motion for reconsideration are **AFFIRMED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

---

[9] Notably, an affidavit of Olmstead, submitted by Nagle for the first time on appeal, supports Nagle's contention. (Dkt. No. 9 at 65-68.) As with the previously-mentioned Rose affidavit, *see supra* note 4, Nagle makes no legal argument in support of its inclusion of Olmstead's affidavit submitted for the first time on appeal. (*Id.* at 69-73.)

19

Decision and Order to the parties.

**IT IS SO ORDERED.**

October 14, 2015
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge